James F. YOUNG, on his own behalf and on behalf of all others similarly situated, Appellants,

v.

INTERNATIONAL TELEPHONE & TELEGRAPH CO., Nesbitt Division, Hershman Sheet Metal Works, Inc., Local #19, Sheet Metal Workers, International Association, Al Kern, individually and as Vice President of Local #19, Sheet Metal Workers International Association.

No. 19269.

United States Court of Appeals, Third Circuit.

Argued Dec. 15, 1970.

Decided Feb. 11, 1971.

Edwin D. Wolf, Philadelphia, Pa. (Sharon K. Wallis, Lawyer's Committee for Civil Rights Under Law, Philadelphia, Pa., on the brief), for appellants.

H. Thomas Felix, II, Richard H. Markowitz, Philadelphia, Pa. (Wilderman, Markowitz & Kirschner, Philadelphia, Pa., on the brief), for appellees.

Lutz Alexander Prager, Atty., E. E. O. C., Washington, D. C. (Stanley P. Hebert, Gen. Counsel, Julia P. Cooper, Atty., E. E. O. C., Washington, D. C., on the brief), for the United States Equal Employment Opportunity Commission amicus curiae.

Before HASTIE, Chief Judge, and FREEDMAN and GIBBONS, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

Plaintiff appeals from the order of the district court which dismissed his complaint for want of subject matter jurisdiction. The complaint seeks damages

and injunctive relief with respect to alleged racial discrimination in employment. In reviewing a dismissal pursuant to Rule 12(b) (1) we must accept these allegations as true.

Plaintiff is a black citizen of the United States, a resident of Philadelphia, and a sheet metal journeyman. Defendant International Telephone & Telegraph Co., Nesbitt Division (Nesbitt) operates a plant in Philadelphia where it employs sheet metal workers. Defendant Local #19, Sheet Metal Workers International Association (Local #19) is an unincorporated trade union of sheet metal workers, having union contracts with employers of sheet metal workers in the Philadelphia area. Defendant Kern is the Vice-President of Local #19. Prior to 1965 there were no minority group members of Local #19 due to a policy of racial exclusion implemented by conspiracy between Local #19 and certain employers including Nesbitt, whereby employers kept minority workers in unskilled job classifications. In 1965 plaintiff was admitted to membership in Local #19 as a result of an order by the Philadelphia Human Relations Commission requiring Nesbitt to reinstate plaintiff in a job category which required his admission to Local #19. Since his admission to Local #19 both it and Nesbitt have harassed plaintiff maliciously and wantonly, in retaliation for his enforcing his right of admission to the union, and pursuant to its general practice of discriminating against black employees. Plaintiff filed three complaints with the Philadelphia Human Relations Commission in an unsuccessful effort to end harassment by Nesbitt, but was eventually forced to seek other employment.

In 1969 Local #19 was composed of 1,688 journeymen, of whom only 17 were from minority groups. At the same time, at least 375 minority group workers were qualified to perform the same work as present members of Local #19 but were denied admission to the Union.

Defendant Hershman Sheet Metal Works, Inc. (Hershman) is an employer of Sheet Metal Workers at its plant in Philadelphia. On July 17, 1970 Hershman offered plaintiff employment and on July 20 he resigned from Nesbitt. When plaintiff went to Local #19 to notify it of his new job Kern informed him that Local #19's rules required that he be placed on the Out-of-Work List, in spite of the fact that Local #19's usual procedure with respect to white members is to grant immediate transfer when a new job has been secured by an individual member. On July 20 Local #19 notified Hershman that plaintiff could not work there, and as a result Hershman cancelled plaintiff's job.

Plaintiff on his own behalf seeks damages from Nesbitt, Hershman and Local #19 for lost wages since July 20, 1970, and temporary and permanent injunctions restraining Hershman from breaching his employment contract, and Local #19 from interfering with that contract. Claiming to act on behalf of all black sheet metal journeymen who are present and potential members of Local #19, pursuant to Rule 23(a) and (b) (2), Fed.R.Civ.P., he seeks temporary and permanent injunctions against Nesbitt, Hershman, and Local #19, restraining each from discriminating against blacks with respect to job opportunities and working conditions.

The complaint does not allege that plaintiff has pursued any remedies under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-5. Jurisdiction is asserted under 42 U.S.C. § 1981 and § 1985, and under 28 U.S.C. § 1343(1) and (4). The district court dismissed (1) because § 1981 is not applicable to discrimination in private employment, and (2) because plaintiff's failure to have invoked the administrative processes of Title VII of the 1964 Civil Rights Act is fatal to his cause. We reverse.

### I. The Effect of 42 U.S.C. § 1981

■ Defendants contend that § 1981 does not give plaintiff a right of action

for their acts of discrimination relating to his employment. That statute provides:

All persons within the jurisdiction of the United States shall have the same right * * * to make and enforce contracts * * * as is enjoyed by white citizens * * *.

Respondents contend that this section is not applicable to private acts of discrimination in employment because, having been enacted pursuant to congressional powers under the Fourteenth Amendment, it must be read as applicable only to state action. Courts of Appeals in two circuits have considered and rejected this contention, and we agree. Waters v. Wisconsin Steel Works of Internat'l Harvester Co., 427 F.2d 476 (7th Cir.), cert. denied International Harvester Co. v. Waters, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970); Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970).[1] These courts concluded that § 1981 was derived from the Civil Rights Act of 1866, 14 Stat. 27 (1866), that the 1866 Act was enacted pursuant to congressional powers under the Thirteenth Amendment, and that it was intended to prohibit acts of private discrimination.

In Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), the Supreme Court held that 42 U.S.C. § 1982, which was derived from § 1 of the Civil Rights Act of 1866, prohibited all racial discrimination, public and private in the sale or rental of property. The constitutionality of this enactment was upheld on the basis of congressional power to enforce the Thirteenth Amendment. If, as plaintiff contends, § 1981 was derived from the same 1866 statute, Jones v. Alfred H. Mayer Co., supra, and the subsequent case of Sullivan v. Little Hunting Park, 396 U. S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) control. Defendants argue, however, that § 1981 is derived not from the 1866 Act, but from the Act of 31 May, 1870, 16 Stat. 140, 144. In one sense this is true, for after the adoption of the Fourteenth Amendment, Congress in the 1870 Civil Rights Act, in order to insure that the prohibitions of the 1866 Act were supported by that Amendment as well as the Thirteenth, restated verbatim parts of the 1866 Act including the part which in the 1866 Act was the nearest counterpart of § 1981. The part of the 1866 Act dealing with property (now § 1982) was not restated in 1870. When in 1874 prior acts were codified the two sections became sections 1977 and 1978 of the Revised Statutes of 1874. The codification acknowledges the 1866 Act for the derivation of § 1978 (now § 1982) but acknowledges the 1870 Act for the derivation of § 1977 (now § 1981). Where there is any difference in language between the 1866 and 1870 Acts the 1870 Act is for present purposes broader since it applied to all persons within the jurisdiction of the United States, not just to citizens. Nothing in this history shows any congressional intent in 1870 or in 1874 not to rely upon the Thirteenth Amendment or to restrict what is now § 1981 to cases involving state action.[2]

The Supreme Court evidently concludes that both § 1981 and § 1982 were enacted under Thirteenth Amendment powers for in Jones v. Alfred H. Mayer

---

[1]. Accord, State of Washington v. Bough Constr. Co., 313 F.Supp. 598 (W.D. Wash., N.D.1968); Clark v. American Marine Corp., 304 F.Supp. 603 (E.D.La. 1969) (dictum); United States v. Medical Society of South Carolina, 298 F. Supp. 145 (D.S.C.1969) (dictum); Dobbins v. Local 212, IBEW, 292 F.Supp. 413 (S.D.Ohio 1968) (dictum). The district court relied on two cases rejecting the cause of action. Harrison v. American Can Co., 2 F.E.P. 1 (S.D.Ala.1969); Smith v. North American Rockwell Corp., 50 F.R.D. 515 (N.D.Okla.1970). Since the decision in Sanders v. Dobbs Houses, Inc., supra, the Harrison case is no longer authoritative even in the Southern District of Alabama.

[2]. See Note, Racial Discrimination in Employment under the Civil Rights Act of 1866, 36 U.Chi.L.Rev. 615 (1969); Larsen, New Law of Race Relations, 1969 Wis.L.Rev. 470.

Co., *supra,* it discussed Hodges v. United States, 203 U.S. 1, 27 S.Ct. 6, 51 L.Ed. 65 (1906), a case involving § 1977 of the Revised Statutes (now § 1981) and an employment situation in which the Court had taken a restricted view of congressional power under the Thirteenth Amendment. The court said, "Insofar as *Hodges* is inconsistent with our holding today, it is hereby overruled." 392 U.S. at 441 n. 78, 88 S.Ct. at 2205. Sullivan v. Little Hunting Park, *supra,* considered a complaint based on both § 1981 and § 1982. While the holding in that case refers to § 1982 neither the majority nor the dissent draws any distinction between the two sections. Thus the indication in Jones v. Alfred H. Mayer Co., *supra,* of common lineage of the two sections may still be relied upon. We conclude, therefore, that this case falls within the holdings of Jones v. Alfred H. Mayer Co., *supra,* and Sullivan v. Little Hunting Park, *supra,* and § 1981 is applicable to private acts of discrimination.[3]

Defendants also contend that assuming the applicability of § 1981 to certain private acts of discrimination, a fair reading of the statute precludes the construction that it was intended to apply to the employment situation. We cannot agree. In the context of the Reconstruction it would be hard to imagine to what contract right the Congress was more likely to have been referring. Certainly the recently emancipated slaves had little or nothing other than their personal services about which to contract. If such contracts were not included, what was? Certainly the situation of former slaves with respect to their labor was a matter of grave concern in the Congress when the 1866 Act was passed.[4] We

therefore reject the strained reading of § 1981 suggested by defendants.

Since this appeal arises on the pleadings, it presents no precise issue as to the relief which would be available assuming that § 1981 prohibits private discrimination in employment. Sullivan v. Little Hunting Park, *supra,* indicates that 28 U.S.C. § 1343(4) creates federal jurisdiction to award damages or equitable relief, and that on the authority of 42 U.S.C. § 1988 a district court may draw from federal or state sources an appropriate federal rule of damages. 396 U.S. at 238–240, 90 S.Ct. 400. Thus, unless another statute has repealed § 1981 by necessary implication, the district court had jurisdiction to grant all the relief which plaintiff requested.

## II. The Effect of 42 U.S.C. § 2000e et seq. on § 1981

Defendants contend that Title VII of the Civil Rights Act of 1964 did by necessary implication deprive the district court of jurisdiction. There could have been no intentional repealer, since in 1964 the Congress had no knowledge that private discrimination was prohibited by either § 1981 or § 1982. Jones v. Alfred H. Mayer Co., *supra,* was not decided until 1968. In that case the Supreme Court referred[5] to the rules of statutory construction of Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936):

There are two well-settled categories of repeals by implication—(1) Where provisions in the two acts are in irreconcilable conflict, the latter act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the latter act covers the whole

---

3. Defendants contend that this conclusion is at variance with Farmer v. Philadelphia Electric Co., 329 F.2d 3 (3d Cir. 1964). Clearly it is not. That case did not consider the possibility that § 1981 created a private cause of action because § 1982 had not at that time been held applicable to private discrimination by Jones v. Alfred H. Mayer Co., *supra.*

4. See, e. g., Report of Maj. Gen. C. Schurz at 16–25, S.Exec.Doc.No.2, 39th Cong., 1st Sess. (Dec. 19, 1865); Cong.Globe, 39th Cong., 1st Sess., at 1160 (H.P.) (March 2, 1866) (remarks of Rep. Windom), at 156 (S.P.App.) (March 8, 1866) (remarks of Sen. Morril), at 1833 (H.P.) (April 7, 1866) (remarks of Rep. Lawrence).

5. 392 U.S. at 437, 88 S.Ct. 2186.

subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. But, in either case, the intention of the legislature to repeal must be clear and manifest; otherwise, at least as a general thing, the latter act is to be construed as a continuation of, and not a substitute for, the first act and will continue to speak, so far as the two acts are the same, from the time of the first enactment.

Applying these rules of statutory construction, we hold that Title VII of the 1964 Act does not deprive the district courts of jurisdiction over actions brought under § 1981 to remedy private discrimination in employment.

Title VII prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin, by specified groups of employers, labor unions and employment agencies. 42 U.S.C. § 2000e-2. Discrimination on the basis of religion, sex, or national origin, but not on the basis of race or color—is permitted where the qualification is "reasonably necessary in the normal operation of that particular business or enterprise * * *." 42 U.S.C. § 2000e-2(e). Only employers in interstate commerce, employing 25 or more employees are covered. 42 U.S.C. § 2000e(b). The Act does not cover the United States or State Governments or Indian Tribes. 42 U.S.C. § 2000e(b) (1). It does not cover private clubs, 42 U.S.C. § 2000e(b) (2), or the employment of individuals performing educational functions for educational institutions. 42 U.S.C. § 2000e-1. Thus with respect to employ-ers covered, Title VII coverage is narrower than § 1981. It is broader in coverage of classes of victims of discriminatory acts. And since § 1981 covers other contract rights besides that of employment as well as rights other than the right to contract, Title VII clearly does not cover the whole subject of the earlier act. We are not dealing with a statute intended as a substitute. The remaining question is whether in any respects the two statutes are in irreconcilable conflict.

To enforce its prohibitions against discrimination Title VII created the Equal Employment Opportunity Commission (EEOC) which is empowered to investigate complaints from aggrieved persons. In a state or political subdivision having a law prohibiting the employment practice alleged, however, the EEOC must defer to any state or local enforcement agency for sixty days. § 2000e-5(b), (c). Following this period the EEOC must begin its investigation regardless of the stage to which the state proceedings have advanced. The Commission, after the investigation, must consider whether there is reasonable cause to believe an unlawful employment practice has occurred. If it so finds, it must attempt to conciliate the claim. § 2000e-5(a). If the conciliation efforts are unsuccessful, or if conciliation has not taken place within thirty days, the complainant may proceed with an action in a federal court. § 2000e-5(e)[6]. The EEOC has no enforcement powers.[7]

Defendants contend that the provisions for deferral to state agencies for sixty days and for EEOC conciliation ef-

---

6. In Fekete v. United States Steel Corp., 424 F.2d 331 (3d Cir. 1970), we held that an action may be instituted under 42 U.S.C. § 2000e-5(e) even where the EEOC has found no reasonable cause to believe the allegations of discrimination, so long as the complaining party has first filed his charge with the EEOC and given it the opportunity to seek conciliation. The district court erroneously relied on that decision in rejecting the cause of action under § 1981, since nothing therein in any way relates to the Civil Rights Act of 1886. For a general discussion of the exhaustion requirements under Title VII see Annot., 5 A.L.R.Fed. 334 (1970).

7. The EEOC may, however, commence proceedings to compel compliance with a court order issued in an action brought under 42 U.S.C. § 2000e-5(e). 42 U.S.C. § 2000e-5(i). Moreover, the Attorney General may bring a civil action where he has reasonable cause to believe there is a "pattern or practice" of discrimination. 42 U.S.C. § 2000e-6.

forts for thirty days are in irreconcilable conflict with § 1981 and that exhaustion of these steps in the administrative process should be considered as jurisdictional prerequisites to a district court suit charging discrimination in private employment. They argue for a pre-emption of the field by the Title VII administrative remedies, to the exclusion of the federal courts, at least until after the administrative remedies have run their course.

Imposing the duty on the EEOC to defer to state or local agencies for sixty days certainly is no evidence of a congressional intention to deprive other appropriate forums of their jurisdiction. At most it indicates an intention to take advantage of existing state agencies having expertise and experience, and thereby to shield the new federal agency from an overburdening caseload. That this must have been the intention is evidenced by the fact that deferral to state or local agencies is only temporary. If results have not been accomplished in sixty days the EEOC must begin its investigation. We cannot read into the statute an intention on the part of Congress to vest exclusive jurisdiction in state or local agencies even during the sixty days during which the EEOC must defer to such agencies when in many instances deferral by the EEOC will end before the state or local agency acts on the case.

The statutory duty of the EEOC to attempt conciliation presents a more complex issue. Here an intention to substitute conciliation and persuasion for friction and contention in the delicate field of labor-management relations is evident. At the same time no reference is made in the statute or in such legislative history as is available to any limitation on the jurisdiction of other agencies.[8] Yet the Congress was aware that the courts and the National Labor Relations Board deal with racial discrimination by unions and employers. Steele v. Louisville & Nashville R. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1943); Syres v. Oil Workers International Union, 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785 (1955); see also United Packinghouse, Food and Allied Workers Int'l Union, A. F. L.–C. I. O. v. N. L. R. B., 135 U.S.App.D.C. 111, 416 F. 2d 1126, cert. denied, Farmers' Cooperative Compress v. United Packinghouse, 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179 (1969). Several courts have already recognized that there is concurrent jurisdiction between the EEOC and the NLRB. Local Union No. 12, United Rubber, Cork, Linoleum and Plastic Workers of America, A.F.L.–C.I. O. v. N. L. R. B., 368 F.2d 12 (5th Cir. 1966), cert. denied, 389 U.S. 837, 88 S. Ct. 53, 19 L.Ed.2d 99 (1967); United Packinghouse, Food and Allied Workers Int'l Union, A.F.L.–C.I.O. v. N L R B, supra. There is nothing in the language of the statute which casts doubt on the validity of these holdings. Nor is there anything in the language of the statute indicating an intention to deprive the district courts of any pre-existing jurisdiction, known or unknown.

In Waters v. Wisconsin Steel Works of Internat'l Harvester Co., supra, the Seventh Circuit considered the same argument made by the defendants with respect to the necessary effect of the EEOC duty to conciliate and said:

> Because of the strong emphasis which Congress placed upon conciliation, we do not think that aggrieved persons should be allowed to by-pass the Commission without good reason. We hold, therefore, that an aggrieved person may sue directly under section 1981 if he pleads a reasonable excuse for his failure to exhaust EEOC remedies. 427 F.2d at 487.

In that case the plaintiff alleged facts which the court found to be a sufficient

8. In fact, Senator Tower introduced an amendment which would 'have excluded any federal agency but the EEOC from dealing with practices covered by Title VII. That amendment was defeated by more than a 2–1 margin. 110 Cong.Rec. 13650–52 (1964).

justification for failure to proceed before the Commission. Defendants would have us accept the *Waters* case as holding that either exhaustion of EEOC administrative procedures or some justification for nonexhaustion is a jurisdictional prerequisite for an employment discrimination suit. It is not at all clear that the Seventh Circuit intended its *Waters* opinion to go that far. But in any event such a holding would not be warranted by any language in Title VII and we decline to so hold. As will be developed hereinafter, due regard to the conciliation jurisdiction of the EEOC can be afforded by the district courts short of the erection of a jurisdictional bar.

Defendants contend that there is an irreconcilable conflict between § 1981 and Title VII because of the difference in applicable statutes of limitations. There is no federal statute of limitations applicable to § 1981, and the federal courts would look to the most nearly analogous state statute of limitations. See Henig v. Odorioso, 385 F.2d 491 (3d Cir. 1967), cert. denied, 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed.2d 166 (1968). A charge generally must be filed with the Commission, within ninety days after the alleged unlawful practice occurred.[9] This protective limitation on the business of a new federal agency gives no indication of any congressional intention to limit access to the courts. When the Commission notifies the charging party of its inability to achieve conciliation that party may, within thirty days of such notice, commence a civil action in the district court. 42 U.S.C. § 2000e-5(e). There is a distinctly separate Title VII purpose for this thirty day statute of limitations, not applicable to § 1981. Title VII provides:

> Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for the complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Attorney General to intervene in such civil action if he certifies that the case is of general public importance. 42 U.S.C. § 2000e-5(e).

In a Title VII action there is also a provision for the award of reasonable attorney's fees to the prevailing party. 42 U.S.C. § 2000e-5(k). Moreover, as we pointed out hereinabove, many acts of discrimination other than those coming under § 1981 are prohibited by Title VII. Limiting access to the court under Title VII, therefore, involves governmental and judicial interests distinctly different and greater than are involved under § 1981. The different governmental interests include the broader coverage of Title VII and the possibility of participation in the lawsuit by the Attorney General. The different judicial interests include the possibility of waiver of fees and costs, imposition of counsel fees, and appointment of counsel. The difference in applicable statutes of limitations is in these circumstances no argument for implied repeal or even for the application of the Title VII statute of limitations to § 1981 actions. In Sanders v. Dobbs Houses, Inc., *supra,* the Fifth Circuit had before it a § 1981 suit commenced forty-six days after the EEOC had notified plaintiff of its inability to achieve conciliation. It held that the action could proceed. It rejected the contention that there was irreconcilable conflict and hence pre-emption by the later statute. We agree.

We conclude that nothing in Title VII of the Civil Rights Act of 1964 imposes any jurisdictional barrier to a suit brought under § 1981 charging discrimination in private employment.

9. 42 U.S.C. § 2000e–5(d). Where a complainant first resorts to state or local remedies, the charge must be filed with the EEOC within two hundred and ten days after the alleged unlawful employment practice, or within thirty days after receiving notification of termination of state or local proceedings, whichever is earlier. *Id.*

### III. Implementing the Conciliation Policy of Title VII

We do not suggest by this holding that in the course of a suit under § 1981 the conciliation features of Title VII should be entirely disregarded. Even in a suit arising under Title VII the district courts are told:

> Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (b) of this section or the efforts of the commission to obtain voluntary compliance. 42 U.S.C. § 2000e-5(e).

Most § 1981 cases, and in particular most class actions under § 1981, will seek equitable relief. Obviously the availability of conciliation by the EEOC is a factor to be considered in the exercise of discretion in granting such relief. This is particularly the case with preliminary injunctions. There is ample scope, within the traditional bounds of discretion in the application of equitable remedies, for the district courts to develop on a case by case basis an accommodation between their jurisdiction under § 1981 and the conciliation efforts of the Commission. There may be cases, indeed, where conciliation will be more successful because carried out while a preliminary injunction has preserved, for an aggrieved employee, the status quo.

In this connection we call to the district court's attention the Commission's power, under 42 U.S.C. § 2000e-4(f):

> (4) upon request of (i) any employer, whose employees or some of them, or (ii) any labor organization, whose members or some of them, refuse or threaten to refuse to cooperate in effectuating the provisions of this subchapter, to assist in such effectuation by conciliation or such other remedial action as is provided by this subchapter.

This power apparently may be exercised by the EEOC at any time, even during the pendency of a lawsuit brought pursuant to § 1981. The district courts may well find it appropriate to suggest to defendants in certain cases such resort to the healing remedies of conference, conciliation, and persuasion.

Title VII is in our view "a continuation of, and not a substitute for" § 1981. Cf. Posadas v. National City Bank, *supra*, 296 U.S. at 503, 56 S.Ct. at 352. By fashioning equitable relief with due regard to the availability of conciliation and by encouraging in appropriate cases a resort to the EEOC during the pendency of § 1981 cases the courts will carry out the policies of both statutes. The order dismissing the complaint for lack of subject matter jurisdiction will be reversed, and the case remanded to · the district court for further proceedings consistent with this opinion.