**William B. HINES and Marvin Thomas et al., etc., Plaintiffs-Appellants,**

v.

**George D'ARTOIS, T. P. Kelly and City of Shreveport, Defendants-Appellees,**

v.

**John C. RUNYON, State Examiner of the Municipal Fire and Police Civil Service, State of Louisiana, Movant-Appellant.**

No. 74–3673.

United States Court of Appeals, Fifth Circuit.

May 13, 1976.

Henry C. Walker, Shreveport, La.,
George M. Strickler, Jr., New Orleans, La.,
for W. B. Hines.

John L. Avant, Sp. Counsel, Baton Rouge, La., for J. C. Runyon.

John Gallagher, Charles C. Grubb, Neil Dixon, Shreveport, La., for defendants-appellees.

Before GOLDBERG, DYER and SIMP-SON, Circuit Judges.

GOLDBERG, Circuit Judge:

The plaintiffs in this employment discrimination case, brought under 42 U.S.C. §§ 1981 and 1983, have taken an appeal from a district court order staying the litigation until the plaintiffs file with the Equal Employment Opportunity Commission a complaint based on the same alleged discrimination, and pursue that complaint to final EEOC action. A separate appeal has been taken by a would-be intervenor in the same litigation, who was initially permitted to intervene but then was dismissed as an intervenor by the district court at the same time it entered the stay order. We find that we have jurisdiction over both appeals, and that both are meritorious. We reverse.

## I. *Factual and Procedural Background.*

This suit was filed in November, 1973, by the 32 black members of the Shreveport Police force, one black who had been discharged from the force, and one unsuccessful black applicant. Named defendants included the Shreveport Commissioner of Public Safety and the Chief of Police.[1] The plaintiffs brought their suit under 42 U.S.C. §§ 1981, 1983, and the Fourteenth Amendment, and sought to obtain redress for a broad range of alleged racially discriminatory practices in the Shreveport Police force.

During December, 1973, and early 1974, pretrial discovery proceeded expeditiously. In February, 1974, John Runyon, State Examiner for the Municipal Fire & Police Civil Service, moved to intervene as a defendant and, without opposition, was permitted to do so by the court. Thereafter, the parties made various motions and all sought an early trial date.

In July, 1974, the trial court entered an order disposing of the parties' motions, and, in addition, reaching two matters *sua sponte.* Without being requested to do so by any party, the court 1) ordered that the case would be stayed pending the filing by the plaintiffs of Title VII proceedings before the Equal Employment Opportunity Commission, and that plaintiffs would be required to "carry their application for relief to final conclusion by the Commissioner before undertaking any further proceedings herein,"[2] and, 2) vacated its earlier order

---

1. Not at issue in this appeal are the district court's conclusions with regard to the jurisdiction *vel non* of the court over various defendants under §§ 1981 and 1983. *Hines v. D'Artois,* W.D.La.1974, 383 F.Supp. 184, 189–91. *See generally, Muzquiz v. City of San Antonio,* 5 Cir. 1976, 528 F.2d 499 (en banc).

2. The district court's order staying the litigation and preserving the status quo reads as follows:

   That this case against all remaining parties is hereby stayed and held in abeyance, and the plaintiffs are ordered and directed to initiate proceedings pursuant to Title VII of the Civil Rights Act of 1964 as amended, Title 42 U.S.C.A. § 2000 [2000e] et seq., before the Equal Employment Opportunity Commission (EEOC), on or before December 6, 1974, seeking redress pursuant to the terms of the Act, and that plaintiffs carry their application for relief to final conclusion by the Commis-

   sion before undertaking any further proceedings herein; the Commission is respectfully requested to receive and to entertain the charges so filed, to investigate the same and to expedite its determination of this matter.

   The status quo of all officers and employees of the City of Shreveport Police Department shall be and is hereby preserved pending the further orders of this Court; provided, however, that nothing herein contained shall be construed so as to prevent the orderly administration of the affairs of the Police Department on a racially nondiscriminatory basis, and that plaintiffs in this suit shall be entitled to all benefits accruing to them on a retroactive basis in the event relief is obtained as a result of action by the EEOC or the final decree of this Court.

   As noted in text, defendants did not seek this stay order. Neither do they seek to defend its propriety now, as they have not filed an appellate brief.

permitting Runyon to intervene, and dismissed him as an intervenor.

On motions for modification by all parties, the district court essentially adhered to its original order in an amended order issued in October, 1974. The district court's opinion accompanying this amended order is published at 383 F.Supp. 184. Plaintiffs attempt to appeal from the portion of the order mandating a stay of the proceedings until an action with the EEOC is initiated and pursued to completion. *See id.* at 191. Mr. Runyon attempts to appeal from the order denying his intervention. *See id.* at 189.

## II. *Waiting for the E.E.O.C.*

### A. Appellate Jurisdiction.

An initial question we must face is whether the order appealed from here is subject to appellate review. Superficially, the order staying the proceedings would seem not to be a "final decision" under 28 U.S.C. § 1291, in that the court below retained jurisdiction for a later disposition of the merits. There exist, however, at least four possible routes from a district court stay order directly to the court of appeals, and we examine them each in turn.[3]

### 1. The Action-at-Law Avenue.

Orders granting stays are appealable in some circumstances under 28 U.S.C. § 1292(a)(1), which gives the courts of appeals jurisdiction of appeals from

[i]nterlocutory orders of . . . district courts . . . granting, continu-

ing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . . .

The general test has been stated thusly:

[a]n order staying or refusing to stay proceedings in the District Court is appealable under § 1292(a)(1) only if (A) the action in which the order was made is an action which, before the fusion of law and equity, was by its nature an action at law; and (B) the stay was sought to permit the prior determination of some equitable defense or counterclaim.

*Wallace v. Norman Industries, Inc.,* 5 Cir. 1972, 467 F.2d 824, 826–27, citing *Jackson Brewing Co. v. Clarke,* 5 Cir. 1962, 303 F.2d 844, *cert. denied,* 1962, 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124. *Accord, Anderson v. United States,* 5 Cir. 1975, 520 F.2d 1027; *Cobb v. Lewis,* 5 Cir. 1974, 488 F.2d 41. The present day validity of this seemingly artifactual rule is derived from the Supreme Court's 1955 decision in *Baltimore Contractors, Inc. v. Bodinger,* 1955, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233.[4]

The stay order before us would appear not to meet this strict two-part test for appealability under § 1292(a)(1). Conceivably, the action could be characterized in part as one "at law," since the relief sought included a prayer for back pay. The stay, however, was not "sought," and its function cannot be properly characterized as "to permit the prior determination of some equitable defense or counterclaim." Literally read, then, the *Jackson Brewing* rule suggests that § 1292(a)(1) is not available to these plaintiffs as an avenue of appeal.

---

3. Substantially the same four roads are discussed in *Dellinger v. Mitchell,* 1971, 143 U.S. App.D.C. 60, 442 F.2d 782, 788–89. *Dellinger* faced an appeal from an order staying a § 1983 damage action against federal officials alleged to have wiretapped plaintiffs illegally pending the resolution, including appellate review, of the "Chicago Seven" conspiracy trial, a criminal action involving some of the § 1983 plaintiffs as defendants and some of the same issues regarding wiretapping. The court of appeals held that since the stay order was to endure beyond the end of the criminal trial, and since it affected the § 1983 rights of plaintiffs, who

were not defendants in the criminal case, the stay order constituted an abuse of discretion.

4. *But cf. Glen Oaks Utilities, Inc. v. City of Houston,* 5 Cir. 1960, 280 F.2d 330, 333:

The operation of the stay order is the same in the action equitable as in the action legal and if a right of appeal should be allowed or denied in one, the same should be true in the other.

Mercifully, the case before us does not require us to attempt to reconcile this language from *Glen Oaks* with the rule derived from the other Fifth Circuit cases cited in text.

2. The Injunction Denied Road.

Another line of cases in this circuit indicates that § 1292(a)(1) appellate jurisdiction over stay orders is somewhat broader than the strict two part test quoted above would indicate. Specifically, it has been held that a stay order is appealable when it is the practical equivalent of a denial of a motion for a preliminary injunction. *Glen Oaks Utilities v. City of Houston,* 5 Cir. 1960, 280 F.2d 330. *See also Gray Line Motor Tours, Inc. v. City of New Orleans,* 5 Cir. 1974, 498 F.2d 293; *Mercury Motor Express v. Brinke,* 5 Cir. 1973, 475 F.2d 1086. This second avenue of appeal also seems to be unavailable in this case, however, since there was no motion by plaintiffs for a preliminary injunction, and no other indication that the stay order can be construed as having the practical effect of a denial of a preliminary injunction.[5]

3. *Cohen-Bon Voyage:* The River Styx.

The unavailability of the two specific § 1292(a)(1) roads described above does not necessarily condemn the plaintiffs to stay where they were stayed. Two more general routes leading to this Court remain to be examined. A number of cases have found certain stay orders appealable because the orders have operated in practical effect as "final" orders under § 1291. In *Idlewild Bon Voyage Liquor Corp. v. Rohan,* S.D.N.Y.1960, 188 F.Supp. 434, the district court denied a motion to convene a three-judge court and stayed the federal proceedings until the state courts ruled on the central issue in the case. No state court litigation was then pending. The plaintiffs appealed to the Second Circuit, 1961, 289 F.2d 426, and, as the Supreme Court subsequently noted in remanding on another ground,

> [t]he Court of Appeals properly rejected the argument that the order of the District Court "was not final and hence unappealable under 28 U.S.C. §§ 1291, 1292," pointing out that "[a]ppellant was

effectively out of court." 289 F.2d at 428.

*Idlewild Bon Voyage Liquor Corp. v. Epstein,* 1962, 370 U.S. 713, 715 n.2, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794, 796.

■ Our authority to treat a stay order as appealable under § 1291 when the effect of that order is to place the litigant "out of court" is reinforced by Supreme Court cases dealing more generally with the question of what district court orders are "final". Relying primarily on *Cohen v. Beneficial Industrial Loan Corp.,* 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, the Supreme Court in *Gillespie v. United States Steel Corp.,* 1964, 379 U.S. 148, 152–53, 85 S.Ct. 308, 311, 13 L.Ed.2d 199, 203, discussed § 1291 as follows:

> [a] decision "final" within the meaning of § 1291 does not necessarily mean the last order possible to be made in a case. . . . And our cases long have recognized that whether a ruling is "final" within the meaning of § 1291 is frequently so close a question that decision of that issue either way can be supported with equally forceful arguments, and that it is impossible to devise a formula to resolve all marginal cases coming within what might well be called the "twilight zone" of finality. Because of this difficulty this Court has held that the requirement of finality is to be given a "practical rather than a technical construction." . . . [i]n deciding the question of finality the most important competing considerations are "the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other." [citations omitted]

A "practical" construction requires that when a plaintiff's action is effectively dead, the order which killed it must be viewed as final. Effective death should be understood to comprehend any extended state of suspended animation.

---

5. The part of the district court's order preserving the status quo, *see* note 1, *supra,* is of course in the nature of a preliminary injunction, but this is not the part of the order from which plaintiffs attempt to appeal—indeed, the injunction is in their favor, so only the defendants could have appealed from it. *See Liberty Mutual Ins. Co. v. Wetzel,* 1976, —— U.S. ——, ——, 96 S.Ct. 1202, 1207, 47 L.Ed.2d 435, 442.

The applicability of the general *Cohen-Gillespie* principles to stay orders is clear from *Bon Voyage* and from several appeals court decisions. This Court, in *Glen Oaks, supra,* while reaching the narrow holding described above, added the following language:

> Whether the [stay] order is subject to appeal depends upon its effect rather than its terminology. . . . The order has such attributes of finality as will permit an appeal to be taken. . . .

280 F.2d at 333 (citations omitted). In *Civil Aeronautics Board v. Aeromatic Travel Corp.,* 2 Cir. 1974, 489 F.2d 251, the court of appeals relied on *Cohen* in finding that it had jurisdiction over an appeal from district court order staying the C.A.B.'s suit on the grounds that the C.A.B. itself had primary jurisdiction over the issue. The Tenth Circuit recently held that it had jurisdiction, under the *Cohen* rationale, over an appeal from a district court order remanding the case to the Interstate Commerce Commission for further findings (and thus, in effect, staying the proceedings before the district court). *Ringsby Truck Lines, Inc. v. United States,* 1974, 490 F.2d 620.[6]

In the circumstances of this case, we believe we are justified in treating the stay order entered below as a "final" order for the purposes of § 1291.[7] No EEOC complaint had been filed by any party in relation to this action when the district court entered its order staying the litigation pending *completion* of EEOC proceedings. We noted in 1972 that "it takes the EEOC a minimum of eighteen months to two years to process a charge of discrimination," *Chromcraft Corp. v. EEOC,* 5 Cir. 1972, 465 F.2d 745, 747.[8] The uncontradicted affidavit of plaintiffs' counsel, presented to the district court in support of a motion to modify order, attested to his experience that the length of time the New Orleans EEOC office (where this complaint would be heard) has taken to investigate and attempt reconciliation of discrimination charges was 1½ to 5½ years. The EEOC, in its amicus brief in this case, makes the following uncontested statement:

> As of December, 1974, there were 2,195 charges pending in the Commission's New Orleans District Office, with 215 new charges filed each month. The average period of time elapsing between the filing of a charge until conciliation is attempted is 40.2 months.

Whatever the absolute judicial validity of the above sources of information, it seems beyond cavil that the effect of the stay order in this case was to put plaintiffs "effectively out of court," *see Bon Voyage, supra,* for a protracted and indefinite period—at least eighteen months, and possibly much longer. For the purposes of expedition and certainty, the parties here would

---

**6.** In *Ringsby* some proceedings had already taken place before the I.C.C., so there existed, at least, something for the district court to remand to. In the instant case no EEOC proceedings had been instituted at the time of the stay order—the hollowness of the prerequisite forced on the plaintiffs here renders the death knell for their action all the louder.

**7.** The district court apparently was of the opinion, too, that it was entering a final, appealable order, as is evidenced by its order staying the effect of the initial stay order pending its ruling on the motion to modify:

> Upon motion by plaintiffs and for good cause shown IT IS HEREBY ORDERED that that section of this Court's order of July 1, 1974, which stays proceedings in this case pending conciliation by the EEOC be stayed until this Court rules on the Plaintiffs' Motion to Modify that order. The effect of this

stay is to allow the parties to proceed with the case pending a ruling on the Motion To Modify. The time for appealing the July 1st order will run from the date on which the Court rules on the Motion To Modify.

Although this order indicates, perhaps, that the trial court would agree that the order was appealable, it of course does not satisfy the substantive or procedural requirements of the special routes of appeal from interlocutory orders set out in Fed.R.Civ.P. 54(b) and 28 U.S.C. § 1292(b). *See generally Liberty Mutual Ins. Co. v. Wetzel, supra,* note 5.

**8.** *Cf. EEOC v. Exchange Security Bank,* 5 Cir. 1976, 529 F.2d 1214 (dealing with a situation in which EEOC had issued an investigative subpoena 21 months after a discrimination charge had been filed, and had waited an additional 18 months before seeking enforcement of the subpoena).

have been served just as well by a stay pending the arrival of Godot.

We do not overlook the fact that the district court, in conjunction with its stay order, "respectfully requested" the EEOC "to receive and to entertain the charges so filed, to investigate the same and to expedite its determination of this matter." We quote again from the amicus brief of the EEOC:

> Although the Commission's New Orleans office implemented a procedure for expediting charges in December, 1974, it is not known how long it will take to process an "expedited" charge. Moreover, if investigation of charges filed in the course of § 1981 suits are expedited, as the district court requested in this case, the anomalous result will be that such charges will take precedence over charges previously filed pursuant to regular Title VII procedures.

· We agree that the expedition requested by the district court would lead to an anomalous result, and we find that the court's request does nothing to undermine our initial conclusion that the stay order placed plaintiffs effectively out of court. Nothing in the record indicates that there was any possibility, at the time the district court entered its order, that the EEOC proceedings could be initiated and brought to the conciliation stage in less than eighteen months.[9] The delay could have been much longer. If plaintiffs were forced to await judicial review of the validity of the stay order until all EEOC proceedings and then all trial court proceedings were completed, they effectively would be denied review on that point altogether. If the stay was in fact in derogation of their rights, the appellate court at that point would be powerless to afford effective relief. Since the district court has yet to address the merits in this case, "the inconvenience and costs of piecemeal review" are small, and, as seen, "the

danger of denying justice by delay" is large. *See Gillespie, supra.* The balance clearly favors treating this stay as a final order.

### 4. The Mandamus Bypass.

Our conclusion that this court has jurisdiction to decide whether the stay order was justifiable is buttressed by the potential availability of a fourth route from stay orders to the court of appeals. Had we concluded that no appeal could be taken from this stay order under §§ 1291 and 1292, we would still have the discretionary authority to treat the attempted appeal as a petition for mandamus, 28 U.S.C. § 1651. *See, e. g., United States v. Briggs,* 5 Cir. 1975, 514 F.2d 794, 808; *Dellinger v. Mitchell,* 1971, 143 U.S.App.D.C. 60, 442 F.2d 782, 788–90; *United States v. Moore,* 9 Cir. 1966, 368 F.2d 990; *Flora Construction Co. v. Fireman's Fund Insurance Co.,* 10 Cir. 1962, 307 F.2d 413, *cert. denied,* 1963, 371 U.S. 950, 83 S.Ct. 505, 9 L.Ed.2d 499. *Cf. Harris v. Gibson,* 5 Cir. 1963, 322 F.2d 780 (finding jurisdiction under §§ 1291, 1292 and 1651 over a district court's "pre-trial order" enjoining the transfer of black students to an all white school).

Mandamus, of course, is an extraordinary remedy reserved for extraordinary situations, *United States v. United States District Court, Southern District of Texas,* 5 Cir. 1974, 506 F.2d 383, but the limited availability of the writ does not preclude our examination of an attempted appeal to determine whether the action appealed from reflected the sort of abuse of discretion which would render the writ appropriate. In the circumstances of the case before us, we have decided to treat the stay order, in light of its practical effect, as a final decision for purposes of § 1291. We note the possibility of mandamus jurisdiction only to emphasize that, one way or another, this case is properly before us.[10]

---

9. In compliance with the district court's order, the plaintiffs filed an EEOC charge on October 29, 1974. No representation has been made to this Court that the processing of that charge has approached a "final conclusion" in the EEOC.

10. The avenues of § 1291 or § 1292 appealability on the one hand, and that of mandamus on the other, are mutually exclusive—if an appeal is proper, mandamus may not be used as a substitute for appeal. *See, e. g., A–Cos Leasing Corp. v. Ingraham,* 5 Cir. 1969, 408 F.2d

## B.  Was the Stay Proper?

The Supreme Court in *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153, made several general statements relevant to the review of district court stay orders: [11]

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.
>
> .     .     .     .     .
>
> .  .  .  The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description.  When once those limits have been reached, the fetters should fall off.  To put the thought in other words, an order which is to continue by its terms for an immoderate stretch of time is not to be upheld as moderate because conceivably the court that made it may be persuaded at a later time to undo what it has done.

299 U.S. at 254–55, 257, 57 S.Ct. at 166, 81 L.Ed. at 158.  *See also Dellinger v. Mitchell, supra,* 442 F.2d at 786–88.

■  Clearly, then, a district court has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice.  An appeals court should reverse a district court's stay order only when the stay is "immoder-

ate."  In reviewing stays like the one before us, we believe that whether or not a stay is "immoderate" is a function of two variables—the scope of the stay, and the reasons cited for ordering it.  As we have noted in our discussion of jurisdiction, the stay issued by the court below is indefinite in duration, but in all probability will remain in effect at least eighteen months, and might last for as long as five years.  The scope of this stay, against the background of *Landis,* is sufficient for us to scrutinize the reasons for it very closely.

In its published opinion, the court below explained the stay it was ordering as follows:

> In *Caldwell v. National Brewing Co.,* 443 F.2d 1044, 5 Cir. 1971, the Court noted the availability of remedial relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, in a suit to redress racially discriminatory employment practices between private parties.  Since that decision, the Act of 1964 has been amended by P.L. 92–261 of 1972 to bring within its scope cities and other local governing bodies.  The Caldwell case recognized the co-existensive nature of the conciliatory procedures prescribed by Title VII with the remedy available under § 1981, and the authority of the court to stay any litigation until these procedures are carried out.  We hold that, with enactment of the 1972 amendment, this is a proper solution to the difficult problems confronting the courts in cases such as this.  See also: Legislative History, P.L. 92–261, Cong. and Admin.News, 1972, at pages 2152 et seq.

492, *Belcher v. Grooms,* 5 Cir. 1968, 406 F.2d 14.  In situations when an appellate court cannot characterize a stay order as placing a party "effectively out of court," however, but nevertheless is convinced that the stay order was erroneous and an abuse of discretion, mandamus may be the only basis for jurisdiction. The nature of the dispute before us, with appellants challenging a *sua sponte* order of the court and with "appellees" not seeking to defend that order, renders our review here much like mandamus, even though we have concluded that we are technically reviewing a proper appeal.

11.  In *Landis,* the district court had, on the Government's motion, stayed a suit challenging the constitutionality of the Public Utility Holding Company Act of 1935, pending the conclusion of all litigation, including appellate, in another case the Government had chosen to test the constitutional issue.  Without deciding whether the stay pending resolution of the other case at the trial level (which had occurred) was proper, the Supreme Court held the stay pending appellate resolution of the other case was "immoderate and hence unlawful."

Hopefully, this procedure will bring into the arena all interested parties, including Mr. Runyon, the white members of the Shreveport Police Force, the Board and the City Government as well, and result in a satisfactory and equitable adjustment of the rights of all involved. Our decree will follow, with appropriate injunctive relief at this time to preserve the status quo until Title VII is invoked.

383 F.Supp. at 191 (footnotes omitted).

*Caldwell*, relied upon by the court below, faced the question whether a § 1981 plaintiff must exhaust Title VII remedies, or plead an excuse for failure to do so, before proceeding with the § 1981 court action. Had *Caldwell* answered that question affirmatively, the decision undoubtedly would have supported the action taken by the district court in the case before us. *Caldwell*, however, held otherwise—the court expressly adopted the following holding of the Third Circuit:

[N]othing in Title VII either expressedly or impliedly imposes any jurisdictional barrier to a suit brought under § 1981. . . . [A]ppellant has an independent remedy under § 1981 without respect to exhaustion under Title VII.

443 F.2d at 1046, paraphrasing *Young v. International Telephone & Telegraph Co.*, 3 Cir. 1971, 438 F.2d 757.

The correctness of that holding in *Caldwell* has been validated in subsequent Fifth Circuit and Supreme Court cases. *See, e.g., Johnson v. Railway Express Agency*, 1975, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295, 302 ("the filing of a Title VII

charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a § 1981 action" [12] ); *Alexander v. Gardner-Denver Co.*, 1974, 415 U.S. 36, 48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147, 158 ("the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes"); *Guerra v. Manchester Terminal Corp.*, 5 Cir. 1974, 498 F.2d 641.[13]

■ It is abundantly clear, then, that there exists no general requirement of Title VII exhaustion before a § 1981 action may be prosecuted. The precise question before us, however, is whether a district court in any circumstances has the discretionary power to stay a § 1981 suit pending Title VII exhaustion, and, if so, whether such an order was appropriate in this case.[14] We start with the dictum in *Caldwell* relied upon by the court below:

In reversing and remanding this case to the district court, we recommend to the district court the procedures set out in *Young* so as to accord due regard to the conciliatory policy which is at the heart of Title VII while at the same time preserving the full remedy of § 1981. The Third Circuit pointed to the provision in Title VII giving the district court power to stay any relief until the conciliatory procedures of Title VII are carried out (§ 2000e–5(e)).

443 F.2d at 1046.

*Caldwell* directs us to *Young, supra*, where we find no suggestion that the "full

12. For that proposition, the Supreme Court cited *Caldwell, Young*, and *Long v. Ford Motor Company*, 6 Cir. 1974, 496 F.2d 500. The Court then gave a *"Cf."* cite to *Waters v. Wisconsin Steel Works of Internat'l Harvester Co.*, 7 Cir. 1970, 427 F.2d 476, the only court of appeals case finding a requirement of exhaustion or reasonable excuse. The Seventh Circuit has subsequently repudiated, at least implicitly, the holding in the 1970 *Waters* case. *Waters v. Wisconsin Steel Works of Internat'l Harvester Co.*, 7 Cir. 1974, 502 F.2d 1309, 1315.

13. For a perceptive analysis on issues closely related to the one before us, see Citron, "Deferral of Employee Rights," 27 *Hastings L. J.* 369,

390–93 (1975) (discussing, *inter alia, Alexander, Guerra, McDonnell Douglas Corp. v. Green*, 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, and the effect which should be given by courts hearing Title VII actions to arbitration and EEOC proceedings).

14. Stays in some respects similar to the one ordered in the case *sub judice* have been ordered in at least two other § 1981 suits in district courts in this Circuit. *See Stringer v. Nosef*, N.D.Miss.1975, 388 F.Supp.. 1389; *McMiller v. Bird & Son, Inc.*, W.D.La.1974, 376 F.Supp. 1086.

remedy of § 1981" can be well preserved by delaying it indefinitely. Rather, *Young* indicates that a district court can "in appropriate cases" use its equitable powers to recognize and take advantage of the fact that attempts through Title VII to resolve the same basic dispute upon which the § 1981 action is based might be underway before the EEOC. *See* 438 F.2d at 764. This discussion in *Young* is directed in the main at the considerations relevant to courts' shaping of preliminary injunctive relief "during the pendency of § 1981 cases." (*Compare*: "while § 1981 cases before them are stayed").

As analogous support for the proposition that a § 1981 court can in some circumstances advance the purposes of both § 1981 and Title VII by fashioning equitable orders with the EEOC in mind, *Young* quotes the following provision of Title VII, also cited in *Caldwell*:

> . . . Upon request, the court may in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsections (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

42 U.S.C. § 2000e–5(f)(1) [formerly § 2000e–5(e)]. This provision gives a court hearing a *Title VII* action the option of staying proceedings, *upon request,* for *not more than sixty days* while EEOC conciliation proceedings (or state or local proceedings) go forward.

In another provision of § 2000e–5(f)(1), Title VII establishes the right of an aggrieved person who files a complaint with the EEOC to bring a Title VII action in court 180 days later, regardless of the status of the EEOC investigation. Thereafter, the court could, pursuant to the provision quoted above, stay the Title VII court proceedings for not more than 60 days. A district court hearing a Title VII case, then, would be acting in clear derogation of the plaintiffs' statutory rights if it entered the sort of stay order that the court below entered in this § 1981 case, for Title VII sets a clock in operation limiting the time in which complainants are restricted to pursuing remedies before the EEOC. Here the trial court corseted the plaintiffs with a stay which could not be loosened until they pilgrim-like had progressed their entire course through the inundated Commission.

Neither *Caldwell,* nor *Young,* nor the analogy of options available to courts in Title VII cases supports the action taken by the court below. Indeed, these three sources of authority seem to suggest instead that the stay order on its face was "immoderate." We turn finally to the most recent Supreme Court pronouncement on the relation between Title VII and § 1981, and its review of legislative history, to determine if there is any reason to doubt the validity of this preliminary conclusion.

In *Johnson v. Railway Express Agency, supra,* the Court held that a charge of employment discrimination filed with the EEOC does not toll the running of the statute of limitations applicable to an action based on the same facts instituted under § 1981. In so holding, the Court stressed that, in many particulars, "section 1981 is not coextensive in its coverage with Title VII." 421 U.S. at 460, 95 S.Ct. at 1720, 44 L.Ed.2d at 301. After a review of the legislative history of Title VII, the *Johnson* court concluded as follows:

> We are satisfied . . . that Congress did not expect that a § 1981 court action usually would be resorted to only upon completion of Title VII procedures and the Commission's efforts to obtain voluntary compliance. Conciliation and persuasion through the administrative process, to be sure, often constitute a desirable approach to settlement of disputes based on sensitive and emotional charges of invidious employment discrimination. We recognize, too, that the filing of a lawsuit might tend to deter efforts at conciliation, that lack of success in the legal action could weaken the Commission's efforts to induce voluntary compliance, and that a suit is privately oriented and narrow, rather than broad, in application, as successful conciliation tends to be. But these are the natural

effects of the choice Congress has made available to the claimant by its conferring upon him independent administrative and judicial remedies. The choice is a valuable one. Under some circumstances, the administrative route may be highly preferred over the litigatory; under others the reverse may be true. We are disinclined, in the face of congressional emphasis upon the existence and independence of the two remedies, to infer any positive preference for one over the other, without a more definite expression in the legislation Congress has enacted, as, for example, a proscription of a § 1981 action while an EEOC claim is pending.

We generally conclude, therefore, that the remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent.

*Id.* at 461, 95 S.Ct. at 1720, 44 L.Ed.2d at 302.[15]

A discretionary power in the district court to stay a § 1981 suit pending initiation and exhaustion of Title VII EEOC remedies would have a very destructive effect on the valuable choice which *Johnson* found that Congress had intended civil rights claimants to have. Far from being consistent with the policies of Title VII, the

stay issued by the court below denied these plaintiffs a statutory right that Congress, in drafting Title VII, was careful to preserve—the right to pursue remedies under § 1981 and § 1983 independent of any requirement that EEOC and Title VII remedies first be exhausted. The stay was "immoderate and hence unlawful," and the order entering the stay must be reversed.[16]

In so holding, we do not reject the suggestion from the dicta in *Caldwell* and *Young* that a district court in dealing with a § 1981 action may in certain circumstances order a stay of the § 1981 proceedings pending some attempt by the parties to resolve their dispute through the offices of the EEOC. We are convinced, however, in light of the clear mandate of Congress and the Supreme Court that Title VII and § 1981 are independent remedies, and under the general principles enunciated in *Landis, supra,* that the circumstances in which such a stay is appropriate, and the permissible scope of such a stay, are both quite limited.

■ Specifically, we feel that a court should not stay a § 1981 suit pending EEOC action on related claims unless there appears a reasonable possibility that EEOC conciliation efforts will be productive. This consideration indicates that this type of stay will almost never be appropriate when, as in the case below, it is not requested by

---

**15.** Three Justices dissented from *Johnson's* holding that the filing of an EEOC complaint does not toll the statute of limitations for § 1981 suits, but the three expressed agreement with the conclusions of the majority quoted in text:

In recognizing that Congress intended to supply aggrieved employees with independent but related avenues of relief under Title VII of the Civil Rights Act of 1964 and § 1981 of the Civil Rights Act of 1866, the Court emphasizes the importance of a full arsenal of weapons to combat unlawful employment discrimination in the private as well as the public sector. The majority stands on firm ground in recognizing that both remedies are available to victims of discriminatory practices.

421 U.S. at 468, 95 S.Ct. at 1724, 44 L.Ed.2d at 306. (Marshall, J., concurring in part and dissenting in part.)

**16.** As in most such situations, the claims which can be brought before the EEOC in this dispute

are not precisely coextensive with those in the § 1981 case. For example, the alleged incidents of discrimination affecting two of the plaintiffs (a refusal to hire and a discharge) occurred more than 180 days before the EEOC charge was filed, and thus the EEOC has no jurisdiction over the claims. 42 U.S.C. § 2000e–5(e). Further, as our discussion regarding Mr. Runyon's intervention indicates, some of the relief requested would require defendants to disregard certain state civil service laws. The prospect of EEOC conciliation on these issues seems quite minimal. We do not, however, make these incongruencies in the nature of the actions before the court and the EEOC the basis of our holding. Even if it were conceivable that plaintiffs could receive all they asked for in court from the EEOC, the stay would nevertheless deprive them of their right to follow the judicial rather than, or in addition to, the administrative route to relief.

at least one party. Further, the scope of the stay must be limited sufficiently to ensure that the plaintiffs' right to the full remedies of § 1981 are preserved. In this regard, the Title VII provision cited by *Caldwell* and *Young,* and quoted above, seems by analogy to provide a helpful benchmark. Such a stay should not remain in effect for more than sixty days. If in some unique situation it appears that a few days longer might permit the EEOC to resolve the dispute, either party would be free to petition for a second stay, with the proviso, of course, that "petitioners must bear the burden . . . of making obvious the need." *Landis, supra,* 299 U.S. at 257, 57 S.Ct. at 167, 81 L.Ed. at 160. The two limits taken together—that there must be a reasonable possibility of EEOC success, and that the stay must remain in effect only sixty days or less—preclude resort to a stay in a § 1981 case when, as was true in the instant case, an EEOC complaint has not been filed.

We must always have great respect for a trial court's judicial discretion in the control of its docket, but we cannot abdicate our roles in monitoring that discretion to prevent the ossification of rights which attends inordinate delay. Stays often can be employed in a reasonable manner to achieve salutary results, but the stay ordered in this case can only frustrate and cannot accomplish. If plaintiffs were not to be permitted forthwith to tell their story to the court, the tale might be stale indeed by the time it reached judicial ears.

### III. *Runyon's Intervention.*

John Runyon is the Louisiana State Examiner for the Municipal Fire and Police Civil Service. His motion to intervene in the action below was unopposed, and the district court's dismissal of Runyon as an intervenor was *sua sponte.* The reasons for this dismissal were discussed in the district court's opinion, set out in relevant part below:

> . . . He [Runyon] has no actual authority over the Shreveport Board, his duties being advisory and ministerial only, restricted to acting to assist the board when requested to do so, preparing and submitting classification plans for the Board's approval, preparing and administering tests of fitness and promotion to applicants for positions in the service, scoring the tests and furnishing the results thereof to the Board, and other important but nondecisional duties enumerated in paragraph 9(j). In the performance of these duties, as this court reads the provisions of the Constitution, he acts for and at the direction of the Municipal Board, offering staff services to it when needed but subject to the Board's approval and final implementation. As such, we do not feel that he is a necessary party to this litigation, and his intervention as a defendant by agreement of the parties was inadvertently allowed by the court. We now vacate our order and dismiss this intervention. Mr. Runyon will be available as a witness to either side in this suit and his testimony will, no doubt, be of great assistance at the trial of this case on the merits.

383 F.Supp. at 189. The citation of paragraph 9(j) refers to Louisiana Constitution art. XIV, § 15.1, para. 9 (1921), which creates and describes the offices of State Examiner and Deputy State Examiner. These provisions are continued in force and effect as statutory pursuant to art. X, § 18 of the Louisiana Constitution of 1974.

Mr. Runyon argues that the court below erred in denying the motion to intervene of right. Fed.R.Civ.P. 24(a) states in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

■ An initial question, as with the stay order, concerns our jurisdiction to entertain this appeal. An order denying in-

tervention is appealable as a final order if intervention was a matter of right. *Sam Fox Pub. Co. v. United States,* 1961, 366 U.S. 683, 687–88, 81 S.Ct. 1309, 1311–1312, 6 L.Ed.2d 604, 608–609. We turn then to the merits—if we uphold appellant's claim that intervention as of right was appropriate, as we do, then jurisdiction here is proper.[17]

Mr. Runyon argues that, contrary to the district court's opinion, he does indeed have "decisional" duties and that he does not simply act for and at the direction of the various Municipal Boards. He points to the following statutory duties as giving him an interest in this action: the local boards may not place applicants into positions without the applicants first taking and passing an examination, and only the State Examiner may prepare, administer, and grade the examinations; the local boards must accept the State Examiner's certification of the applicant's score on the examination; the local boards are not permitted to adopt any classification plan without first obtaining the approval of the State Examiner; the State Examiner is required to take an oath of office to advise and implement the State fire and police civil service system pursuant to the provisions of the Louisiana Constitution and has the duty thereunder to advise the appointing authority, departmental officers and classified employees of the Shreveport Police Department regarding obligations imposed on them by the civil service system. *See generally* Louisiana Constitution art. X, § 18 (1974); art. XIV, § 15.1, para. 9 (1921).

The claims for relief made by plaintiffs in this action which Runyon argues would affect his interest include the following: the plaintiffs challenge the job relatedness of the tests which Runyon has prepared and is administering in cooperation with the Shreveport Police Department; the plaintiffs request that a preference be made in hiring black applicants, implicating Runyon's responsibility to advise the local employer of its obligation to utilize no system of preferences other than that contained within the Louisiana Constitution; the plaintiffs' request that seniority lines be restructured, whereas Runyon is required to advise the local board that they must follow the seniority provisions of the Louisiana Constitution; and, the plaintiffs' claim that blacks should be given first opportunity of transferring out of the patrol division into other departments, which implicates Runyon's responsibility to prepare and administer fitness tests which are to be the basis for such transfers.

On the basis of the relation between Runyon's statutory duties and the claims for relief made by plaintiffs, we are persuaded that Runyon should be allowed to intervene as of right under Rule 24(a). Were the lower court to grant all the relief requested, the State Examiner's ability to protect his interest, both as advisor to the local board on the requirements of the state constitution and as preparer and administrator of civil service examinations, might well be impaired. His interests in this regard may not coincide completely with those of defendants below. The defendants could, for example, agree with plaintiffs that certain aspects of the tests were non-job-related, or that certain preferential relief was appropriate, and Runyon would be left without adequate representation of his interests. Runyon may be neither Othello nor Iago, but he is at least Cassio, and he has a part to play in this drama.

For the foregoing reasons, the orders appealed from are reversed. This cause is remanded to the trial court with directions to proceed expeditiously with the § 1981 action, and to reinstate the State Examiner as an intervening party.

REVERSED and REMANDED.

---

17. In any event, we have treated the stay order as "final" for the purposes of the entire action, and this in itself could give us jurisdiction over the appeal from the order dismissing Runyon. *Cf. Korioth v. Briscoe,* 5 Cir. 1975, 523 F.2d 1271, 1279 n. 26.